**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: _____

KAREN BLACKWOOD,

      Plaintiff,

v.

SKYWEST AIRLINES, INC.

      Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Karen Blackwood, by and through her attorneys, Kimberly J. Jones and Emma M. Feeney of JONES LAW, INC. and Lisa R. Sahli of Lisa R. Sahli, Attorney at Law, LLC, hereby submits her Complaint and Jury Demand against Defendant SkyWest Airlines, Inc. ("Defendant" or "SkyWest"), as follows:

## I.   INTRODUCTION

1.   Captain Karen Blackwood is a 58-year-old female pilot with more than 35 years of experience. She has been employed by Defendant SkyWest as a pilot for over 20 years and has superior qualifications, including coveted Gold Seal Certified Flight Instructor status. Despite her impressive experience and qualifications, SkyWest has repeatedly passed Captain Blackwood over for promotional opportunities, which have instead been awarded to her male counterparts, many of them younger and less qualified than her.

1

2.   SkyWest has failed to promote Captain Blackwood and has discriminated against her because of her sex as part of its pattern or practice of discrimination against women in the terms and conditions of employment.

3.   In the Spring of 2019, Captain Blackwood suffered disabling on-the-job back and neck injuries for which she requested reasonable accommodations including, but not limited to, light duty assignments that would have allowed her to continue working while recovering from her back and neck injuries.  SkyWest failed to engage in the interactive process in good faith, flatly denying Captain Blackwood light duty work that it afforded to her similarly situated, male counterparts who had not reported sex, age and/or disability discrimination, and forcing her instead to take extended and unpaid medical leave.

4.   When Captain Blackwood complained to Defendant's management and to the Equal Employment Opportunity Commission ("EEOC") about the discrimination, hostile work environment, and/or retaliation she experienced, SkyWest embarked on a campaign of retaliatory harassment against her designed to humiliate and punish her for her opposition to discrimination in the workplace, and for her participation in proceedings to enforce her federally-protected civil rights.  SkyWest's retaliation against Captain Blackwood continues to this day.

5.   Captain Blackwood asserts claims against SkyWest for sex discrimination, hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as amended ("Title VII"), disability discrimination and retaliation/retaliatory harassment in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.*, as amended ("ADA"), and retaliation/retaliatory harassment in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*, as amended ("ADEA").

## II.  JURISDICTION AND VENUE

6.   This action arises under the Constitution and laws of the United States.

7. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.  This action is authorized and instituted pursuant to 42 U.S.C. §§ 2000e-5(f)(1) and (3), 29 U.S.C. § 626(c), 42 U.S.C. § 12117(a), which incorporates by reference 42 U.S.C. § 2000e-5(f)(1) and (3), and 42 U.S.C. § 1981(a).

8.   A substantial part of the unlawful employment practices alleged herein were committed within the jurisdiction of the United States District Court for the District of Colorado, and venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## III. ADMINISTRATIVE PREREQUISITES

9.   Plaintiff filed a timely Charge of Discrimination with the EEOC alleging ongoing discrimination and retaliation based on sex, age, and disability on October 17, 2019, and received a Notice of Right to Sue from the EEOC on January 27, 2021.  All administrative prerequisites to this suit have thus been satisfied.

10. Plaintiff is continuing to exhaust her administrative remedies with respect to ongoing discrimination, retaliation, and harassment by SkyWest, and is filing a new Charge of Discrimination with the EEOC in the coming days.  In the interest of judicial efficiency, Plaintiff anticipates that she will seek Administrative Closure or, in the Alternative, a Motion to Stay these Proceedings while that Charge is pending because the acts and conduct to be charged are substantially interrelated with the discrimination and retaliation alleged herein.

## IV. PARTIES

11. Plaintiff Karen Blackwood is a citizen of the United States and a resident of the State of Colorado.  At all times referenced herein, Captain Blackwood has been employed by SkyWest.

12. Defendant SkyWest Airlines, Inc. is a Utah corporation having principle offices located at 444 South River Road, St. George, Utah 84790, and doing business in Colorado.  At all times relevant to this Complaint, SkyWest was an "employer" within the meaning of 42 U.S.C. § 2000e(b), 29 U.S.C. § 630(b), and 42 U.S.C. § 12111(5).  SkyWest employs more than 500 individuals.

## V.  FACTUAL ALLEGATIONS

13. Defendant SkyWest is an American regional airline that contracts with major airline carriers to provide mid-range flights in the U.S., Canada, Mexico and the Bahamas.  Many of its pilots go on to successful careers at major airline carriers.

14. **Captain Blackwood's Qualifications & Experience**.  Plaintiff Karen Blackwood is a 58-year-old woman. She has been employed by SkyWest as a pilot for over twenty (20) years.

15. Captain Blackwood was hired by SkyWest on or around September 6, 2000 as a First Officer.  She upgraded to Captain effective August 17, 2004 and remains in this position to date.

16. As captain, Captain Blackwood acts as "pilot in command," which means she possesses the ultimate control over her aircraft and its crew during taxiing, take-off, flight, and landing. Captain Blackwood is required to hold several special licenses and classifications to fly as a Captain, including an Airline Transport Pilot Certificate and a Federal Aviation Association ("FAA") First Class Medical Certificate.

17. Captain Blackwood has at all relevant times met or exceeded the minimum qualifications necessary for her position as Captain, and met or exceeded performance expectations.

18. Prior to joining SkyWest, Captain Blackwood was a Certified Flight Instructor ("CFI-MEI") for Single- and Multi-Engine aircraft, and an Instrument Instructor ("CFII") and Ground Instructor for fourteen (14) years.  She was recognized as a Gold Seal CFI by the Federal Aviation Administration ("FAA"), which is a certification reserved for outstanding flight instructors who have at least an 80% completion rate among their students. Captain Blackwood had a 100% completion rate.

19. As of 2019, Captain Blackwood had logged over 16,000 flight hours as a pilot and 12,800 hours as a pilot-in-command (Captain) with SkyWest.

20. **Defendant Has a Pattern or Practice of Discrimination Against Female Pilots**. Throughout her employment with Defendant, and despite her ample qualifications and solid performance history, Captain Blackwood has been treated less favorably than her similarly situated male counterparts because of her sex, including by being passed over for promotional opportunities.

21. Captain Blackwood's experience is consistent with Defendant's pattern or practice of subjecting female pilots to disparate treatment in the terms and conditions of employment.

22. Pursuant to this pattern or practice, Captain Blackwood has been subjected to pervasive derogatory sex-based remarks from supervisors and coworkers throughout her tenure.

23. For example, on one occasion SkyWest Captain, Ward Bischoff, remarked that Captain Blackwood was a "cunt bitch."  At the time he said this, Plaintiff was a First Officer and thus subordinate to Captain Bischoff.

24. On another occasion, when Captain Blackwood requested that SkyWest recognize and take appropriate action to address her experience with a male pilot who had stalked her, Captain Blackwood's supervisor, Chief Pilot Captain Bob Venturella, remarked along the lines: "This is why women shouldn't fly airplanes. You should be in the kitchen cooking dinner for your husband."

25. After this incident, Captain Venturella falsely accused Captain Blackwood of giving illegitimate orders to a Flight Attendant, wrote a disciplinary letter of instruction on a false claim that she asked flight attendants for "cokes with 2 straws, not one, and 3 ice cubes," attempted discipline on other occasions for other false (ultimately disproved) claims, disregarded serious concerns she reported to him, interrupted a legal rest period to threaten to terminate her for signing a petition started by a male pilot, refused to tell her about commendations and refused to place them in her personnel file, and otherwise treated her in such a hostile and abusive manner that other pilots told her they thought he "had it out for [her]," and started asking: "has Bob fired you yet today?"

26. During the eight years that Captain Blackwood reported to Captain Venturella, he demonstrated a flagrant disregard for her (and other female pilots) because of her sex, and subjected her to a hostile work environment.

27. Although Captain Blackwood more than once reported Captain Venturella's constant discrimination, harassment, and hostile work environment to Defendant's then-legal-counsel, Kelly Jasmine, and filed a Discrimination Grievance with SkyWest Human Resources, nothing changed.

28. In or about the fall of 2010, Captain Blackwood began reporting to Chief Pilot Rob Graser, who continued subjecting Captain Blackwood to discrimination and a sexually-hostile and

abusive working environment consistent with SkyWest's pattern or practice of sex discrimination against female pilots by making similarly false allegations and trying to write her up.

29. Captain Graser also refused to include commendations in Captain Blackwood's personnel file, although similar types of commendations are routinely included in male pilots' personnel files.

30. For example, Ford Butler, General Manager of PrimeFlight Aviation Services at Kansas City International Airport, wrote to Captain Graser on May 16, 2017 to make sure he knew how much he appreciated Captain Blackwood's collaborative handling of a potential safety issue.

31. On another occasion, Captain Blackwood received high praise from satisfied passengers, including but not limited to written notes of appreciation on April 24, 2016 and December 26, 2016.

32. However, when he received these commendations, Captain Graser made up contrived excuses for not placing them in Captain Blackwood's personnel file.

33. Captain Graser's conduct towards Captain Blackwood was such that, again, fellow pilots felt he must "have it out for [her]."

34. **Defendant Denies Captain Blackwood Promotional Opportunities**. Notwithstanding Captain Blackwood's experience, qualifications, satisfactory performance, and long tenure with SkyWest, Defendant has refused her numerous promotional opportunities for which she applied and is eminently qualified, reserving these opportunities for male pilots.

35. For example, as early as December 2005, Captain Blackwood applied to become a Line Check Airman ("LCA") with SkyWest, and repeatedly made her interest in the position known to Captain Venturella, Captain Graser, Vice President of Flight Operations, Tracy Gallo, and Manager of Flight Operations, Roy Glassey.  Captain Blackwood has at all relevant times met or

exceeded the qualifications needed to be selected for the LCA position.  However, despite keeping her application active and notwithstanding her qualifications, Captain Blackwood has never been selected for LCA.

36. Among other things, LCAs instruct new pilots and ensure that they are following Standard Operating Procedure.  LCAs earn an additional $25 per flight hour, which equates to an average of about $25,000-30,000 of additional annual income.

37. Being selected as an LCA improves a pilot's stature and opportunities within both SkyWest and the airline industry in general.

38. During the eight years she reported to him, Captain Venturella never selected a single female to be an LCA, but he selected dozens of males to be an LCA, many of them younger and less qualified than Captain Blackwood.

39. After she began reporting to Captain Graser, he also selected dozens of males – including but not limited to Sean Aldridge, Adam Brown, Tyler Dunn, and Matt Ashburn – to be LCAs. Many of the men Captain Graser selected were younger and less qualified than Captain Blackwood. Captain Graser selected only one female to be an LCA.

40. During Captain Blackwood's employment, Defendant has consistently employed approximately 250-257 LCAs at any given time.  Although 3.5 – 4% of SkyWest captains eligible to be LCAs are women, Defendant has consistently selected a fraction of those female captains (just 0.4 – 1.2%) to be LCAs.

41. On or about September 20, 2019, SkyWest had openings for LCAs and selected pilots for inclusion in an LCA class to receive LCA designation. Although she is qualified and her application was on file, SkyWest did not select Captain Blackwood for the LCA class at that time.

42. On and after February 20, 2020, SkyWest had additional openings for LCAs and announced that it would be reviewing applications on file on a monthly basis to select pilots for inclusion in LCA classes. Again, despite her qualifications and active application, Captain Blackwood was not and has not been selected.

43. Captain Blackwood is also qualified for and has applied to work as a Simulator Instructor, maintaining an active application for this position throughout her employment. Simulator Instructors have the potential to earn significantly higher salaries than Captain Blackwood does.  Despite her qualifications and active application, Defendant has not selected Captain Blackwood for promotion to Simulator Instructor. Instead, Defendant's Simulator Instructors have all been men.

44. Many of the men Defendant selected for these positions are less qualified for the position than Captain Blackwood.

45. On March 10, 2019, Captain Blackwood applied to serve as a Seat Substitute in response to Defendant's request for Seat Substitutes. This is another position that improves opportunities within SkyWest and the airline industry in general and offers pilots the opportunity to earn additional income.

46. SkyWest did not respond to Captain Blackwood's application for Seat Substitute positions. Subsequently, she learned that SkyWest selected a number of male pilots, at least some of whom had inferior qualifications to her own, as Seat Substitutes.

47. **Captain Blackwood Suffers a Workplace Injury**.  On or about March 11, 2019, Captain Blackwood suffered an on-the-job injury ("OJI") which resulted from SkyWest's requirement that she use a non-ergonomic flight deck seat for 22 hours over three days.  The seat had a metal bar across the lumbar region that repeatedly pressed into Captain Blackwood's lower

9

back throughout the flight, and the vertical adjustment on the seat was difficult to operate, causing Captain Blackwood to suffer back and neck injuries.

48. Immediately following her OJI, Captain Blackwood began experiencing chronic weakness in her upper extremities which impacted her ability to lift, push, and pull.  She also experienced significant back pain and severe radiculopathy (nerve pain).

49. After opening a worker's compensation claim, SkyWest – which is self-insured for workers compensation – placed Captain Blackwood on "OJI leave" on or around March 11, 2019.

50. On March 11, 2019, Captain Blackwood's Authorized Treating Physician, Dr. Jay Reinsma, released her to return to work with a 5 pound lifting restriction and a 10 pound push/pull restriction.  Due to the physical demands of piloting an airplane, Captain Blackwood was temporarily unable to fly an airplane. Subsequently, Captain Blackwood's First Class Medical Certificate, without which a pilot cannot legally fly, was deferred, due to her injuries.

51. However, Captain Blackwood was able to return to work and could have performed various light duty assignments that did not require a Medical Certificate, notwithstanding her temporary restrictions.

52. On or around April 3, 2019, Captain Blackwood contacted SkyWest and requested reassignment to a light duty position.  Per SkyWest company policy, disabled pilots are encouraged to work light duty positions. Light duty work allows a pilot to earn 90% of her normal salary and allows for employer contributions to company sponsored benefits such as health insurance, life insurance, a 12% 401(k) match, and bonuses.

53. SkyWest has created light duty positions for male pilots who lost their Medical Certificates due to injury and/or disability.  For example, Stan Friesien (Safety Auditor), Patrick Altree (Safety Auditor), D.C. Bateman (MEL Revision Auditor), Jake Nelson (Pilot Recruiter),

and Mike Griggs (Simulator Instructor) all received light duty assignments during periods of disability.

54. Captain Blackwood is qualified for and could have performed any number of light duty positions, including reassignment as an Assistant Chief Pilot (also known as Flight Operations Supervisor), Safety Auditor, Pilot Recruiter, and/or Seat Substitute.  None of these positions require an FAA Medical Certificate, and she would have been able to perform all of these positions even with the temporary medical restrictions that resulted from her March 11, 2019 injury.

55. Captain Blackwood had applied for the positions of Assistant Chief Pilot, Safety Auditor, and Seat Substitute positions in the past, but Defendant failed to acknowledge her applications for those position at the time.

56. Defendant did not discuss those or any other light duty positions, or any other potential accommodations, with Captain Blackwood after her OJI.

57. Rather than provide Captain Blackwood accommodations it has freely provided to male Captains, on April 4, 2019, Defendant denied her request for light duty work without discussion or explanation.

58. As a result, Captain Blackwood was forced to take medical leave and to accept worker's compensation benefits, which replaces just 40% of her salary during her leave. She was and remains ineligible for employer contributions to company sponsored benefits such as health insurance, life insurance, a 12% 401(k) match, and bonuses.

59. On or about April 16, 2019, Captain Blackwood complained to Tracy Gallo, Vice President of Flight Operations, about all of the discrimination and harassment she had experienced during her employment.  She reminded him of all the times she applied and was passed over for Line Check Airman, how much that had cost her financially, and of all the young men who were

given the position, including those she taught to fly.  She told Mr. Gallo that female pilots were afraid to speak up, as they were afraid of retaliation and how it would affect their chances of advancing to major airlines. When Mr. Gallo asked if she thought SkyWest discriminated, Captain Blackwood responded in the affirmative.

60. Subsequently, on or about April 25, 2019, Roy Glassey called Captain Blackwood, stating that Tracy Gallo told him that she was pretty upset. Captain Blackwood repeated her complaints about discrimination and retaliation during this call.

61. Although SkyWest policy requires management employees such as Tracy Gallo and Roy Glassey to report complaints of unlawful discrimination to Human Resources, no one contacted Captain Blackwood to discuss or investigate her complaints about discrimination and retaliation.

62. Almost immediately after her complaints, however, SkyWest escalated its campaign of retaliatory harassment against Captain Blackwood, which continues to this day.  Among other things, SkyWest has interfered with Captain Blackwood's medical care and worker's compensation benefits by needlessly delaying approval of therapeutic treatment, demanding that she undergo an Independent Medical Examination ("IME") – then scheduling it 40 miles from her home, when she could have seen someone just a few miles away – conducting online surveillance, and attempting to terminate her benefits when it learned of upcoming travel for her private safari business.

63. Male pilots who suffered workplace injuries who had not complained about discrimination were treated better than Captain Blackwood, and did not experience this level of harassment.

64. For example, male pilots including Chase Friesian, Dirk Pitt, and Kev Tuck owned and operated businesses while receiving worker's compensation benefits, and were not subject to attempts by Defendant to terminate their benefits.

65. On September 22, 2019, Captain Blackwood notified Employee Relations Managers, Kellie Dehais and Simone Christensen, that she experienced retaliation immediately after she reported concerns about discrimination and retaliation to Mr. Gallo and Mr. Glassey, and reported that she had contacted the EEOC about the discrimination and retaliation she was experiencing.

66. Subsequently, on October 17, 2019, Captain Blackwood filed a Charge of Discrimination against SkyWest with the EEOC, alleging ongoing discrimination, harassment and retaliation based on sex, age, and disability.

67. After she filed her Charge, SkyWest escalated its retaliation against Captain Blackwood.

68. On December 23, 2019, Captain Blackwood received a voicemail from the Assistant to the Chief Pilot's Office, Jeff Hall, asking her to return to work as a pilot at the end of the month. Captain Blackwood explained that she was on OJI leave until released by Dr. Reinsma. She also reminded him that if her restrictions were lifted, she would be unable to fly a plane until her Medical Certificate was reissued by the FAA.

69. A week later, on December 31, 2019, Captain Blackwood met with Dr. Reinsma, who informed her that she was "improving," but "not fast enough for SkyWest," and he was thus placing her at Maximum Medical Improvement ("MMI").

70. This terminated Captain Blackwood's OJI leave, and subjected her to the risk of immediate termination.

71. To protect her employment, on or about January 1, 2020, Captain Blackwood requested in writing a Medical Leave of Absence pursuant to Pilot Policy Manual ("PPM") Standard Procedure 3013(3)(a). This policy states in relevant part: "Pilots who become medically disqualified under FAR Part 67 by an Aviation Medical Examiner (AME) will be placed on a Medical Leave of Absence upon written request by the pilot." The policy states that such leave shall not last more than four consecutive years without written consent from the Vice President of Flight Operations.

72. On or about January 14, 2020, however, Captain Blackwood received an email from Human Resources Manager, Pennie Hancock, explaining that because she had reached MMI and was without a Medical Certificate, she had to seek leave under Company Policy Manual ("CPM") Standard Practice 69. This policy is more restrictive than the PPM Standard Procedure 3013(3)(a).

73. As a pilot, Captain Blackwood at all times believed in good faith that her medical leave was governed by the Pilot Policy Manual, not CPM Standard Practice 69. PPM Standard Procedure 3013(3)(a) applies to a pilot who has reached MMI and, in fact, specifically applies to pilots who have lost a Medical Certificate.

74. On January 18, 2020, Captain Blackwood emailed Mr. Gallo to clarify that she was requesting leave pursuant to PPM Standard Procedure 3013(3)(a). Mr. Gallo did not respond.

75. When Mr. Gallo did not respond, Captain Blackwood requested leave pursuant to CPM Standard Policy 69 as instructed, even though she did not believe this policy governed her medical leave of absence.

76. On January 24, 2020, SkyWest notified Captain Blackwood that her leave was approved under CPM Standard Policy 69 as a reasonable accommodation under the ADA until June 30, 2020, with an expected return-to-work date of July 1, 2020.

77. After it placed her at MMI and discontinued her OJI leave, SkyWest issued a Final Admission of Liability in which it knowingly overstated her weekly Permanent Partial Disability benefit by $425.98.

78. Because Captain Blackwood's worker's compensation benefits offset her company-provided Long Term Disability ("LTD") benefits, this had the effect of reducing her LTD benefits by more than $1,800 per month, thereby ratcheting up the financial duress caused by its prolonged, discriminatory, and retaliatory refusal to provide her with reassignment or light duty work it routinely provided to male SkyWest pilots who did not complain about sex, age and/or disability discrimination.

79. Although SkyWest was notified of the error on March 4, 2020, it refused to issue a corrected Final Admission of Liability.

80. SkyWest's obstinate refusal to correct the Final Admission of Liability continued, even after Captain Blackwood contested the Final Admission, by ignoring an administrative law judge's order to correct the error within ten days.  SkyWest ultimately continued its financial retribution for more than eight months, before finally issuing the corrected Final Admission of Liability on August 11, 2020.

81. In the meantime, in May 2020, Captain Blackwood began feeling better and her symptoms began resolving.  Captain Blackwood desired to return to work prior to the conclusion of her leave on July 1, 2020.

82. Because Defendant would not assign her light duty work, she needed to have her restrictions lifted so that she could work to get her FAA Medical Certificate back in order to return to work as a pilot.

83. Captain Blackwood sought to make an appointment with Dr. Reinsma to be re-evaluated to either have her restrictions lifted so that she could return to normal duty, or to have him recertify to SkyWest that her leave should be renewed if she continued to require accommodation.

84. Captain Blackwood needed to see Dr. Reinsma because, per company policy, once an employee has been assigned an Authorized Treating Physician, that is the only doctor authorized to re-evaluate the employee.

85. In June 2020, just before Captain Blackwood's leave would expire if not renewed, Defendant, through its worker's compensation attorneys (who act at the behest and under the authority of Defendant), informed Captain Blackwood that "future care with Dr. Reinsma was never recommended or admitted to and will continue to be denied."

86. Dr. Reinsma does not accept private patients so, despite her offer to do so, Captain Blackwood was not able to pay out of pocket to be seen by him.

87. SkyWest's refusal to authorize Captain Blackwood to see her worker's compensation doctor to be re-evaluated so that she could return to work meant that she was subject to termination when her leave expired at the end of June 2020.

88. On or about June 4, 2020, Captain Blackwood contacted SkyWest Human Resources and complained about the ongoing retaliation. She explained to Human Resources that she was feeling better, her symptoms had resolved, and she wanted to return to work, but that Defendant was preventing her from seeing Dr. Reinsma so that she could get clearance to do so.

89. SkyWest Human Resources did not investigate Captain Blackwood's complaint about retaliation.  Instead, Human Resources representative, Pennie Hancock, responded that the lawyers

representing Defendant on the workers compensation matter were not SkyWest employees, so their interference with her ability to obtain medical clearance could not be retaliatory.

90. Notwithstanding the retaliation and interference by Defendant, Captain Blackwood was able see Dr. Reinsma on or about June 12, 2020, due to the help of a clinic administrator who was unaware of SkyWest's refusal to authorize Captain Blackwood to see the doctor. During the appointment, Dr. Reinsma determined that Captain Blackwood should be released to return to work without restrictions, which she communicated to SkyWest later that day.

91. Even though Captain Blackwood was still without her FAA Medical Certificate, SkyWest policy provides that when an employee's doctor communicates restrictions that allow for temporary modified work, the company will provide modified work through its Transitional Return to Work Program in lieu of continued leave, which it did to accommodate male pilots in similar circumstances.

92. Despite its policy and actual practice of providing temporary modified work when a pilot is released to return to work without restrictions, SkyWest refused to provide temporary modified work to Captain Blackwood when she was released to full duty, instead advising her that she would remain on leave of absence. SkyWest then renewed her leave.

93. On or around July 24, 2020, Captain Blackwood learned that a male Captain, Mike Griggs, was offered a Simulator Instructor job after he lost his Medical Certificate due to disability. Captain Blackwood was qualified and had applied for a position as Simulator Instructor numerous times over the course of her career, yet was denied reassignment to this position.

94. In addition to Captain Griggs, Defendant also offered light duty positions to at least four other male pilots who lost their FAA Medical Certificates, including DC Bateman, Stan Friesian, Patrick Altree, and Jake Nelson.

95. Because SkyWest has refused to reassign or provide Captain Blackwood with any work, she remains out on unpaid Medical Leave under CPM Standard Procedure 69 to this day.

96.   Defendant has and continues to harass and discriminate against Captain Blackwood because of her sex and/or her disability, and to retaliate against her because of her protected conduct in reporting its discriminatory, harassing, and retaliatory conduct to SkyWest managers, HR, and the EEOC.

97. Defendant's unlawful discriminatory and retaliatory conduct has caused her to suffer significant ongoing injuries, damages and losses.

## VI. LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF
### Sex Discrimination (Failure to Promote) in Violation of Title VII
(42 U.S.C. §§ 2000e, *et seq.*)

98. Captain Blackwood incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

99. As a female, Captain Blackwood is a member of the class of persons protected from sex discrimination under Title VII.

100.   Defendant engaged in a pattern or practice of discrimination against female employees because of their sex.

101.   Throughout her tenure with SkyWest, Defendant has repeatedly failed to consider Captain Blackwood for promotional opportunities for which she is qualified and has applied. Instead, Defendant has awarded these opportunities primarily to men.

102.   Captain Blackwood's application for LCA has been on file during all relevant time periods and she has expressed her interest in selection for this position to her Chief Pilots on numerous occasions, but Defendant has refused to select Captain Blackwood for the LCA position.

103.    LCA would have been a promotion for Captain Blackwood as it provides significantly more responsibilities and income, in addition to opening doors internally at SkyWest and within the airline industry in general.

104.    Captain Blackwood met or exceeded all qualifications for the LCA position.  An LCA is required to hold an FAA Medical Certificate, which Captain Blackwood lost on or around July 19, 2019.  However, prior to that time, she was fully qualified, yet never selected by Defendant for the position.

105.    Instead, Defendant selected male pilots for LCA, at least some of whom were less qualified than Captain Blackwood, including Sean Aldridge, Adam Brown, Tyler Dunn, and Matt Ashburn.

106.    Men are significantly overrepresented in the LCA position.  Throughout Captain Blackwood's employment, 3.5%-4% of SkyWest captains have been female, yet only 0.4 – 1.2% of Line Check Airmen were female at any given time.

107.    On March 10, 2019, Captain Blackwood responded to a company-wide email requesting Seat Substitutes and stated that she was interested in the position on an as-needed basis.

108.    Seat Substitute would have been a promotion for Captain Blackwood as it provides significantly more responsibilities and income.

109.    Captain Blackwood at all relevant times met or exceeded the qualifications for the Seat Substitute position.  For example, Seat Substitute is an instructor position and Captain Blackwood holds a Gold Seal CFI rating from the FAA.  Because the Seat Substitute position does not require an FAA Medical Certificate, Captain Blackwood remained qualified even after her OJI.

110.    Captain Blackwood received no response from Defendant regarding the open Seat Substitute positions. Defendant selected men for those positions instead.

111.     Captain Blackwood was senior to and better qualified for this position than many of the men Defendant selected, including Elliot Ericson, Travis Pritchet, and Matthew Prenner.

112.     Defendant failed and refused to consider Captain Blackwood for these promotional opportunities, in whole or in part, because of her sex.

113.     Defendant's discriminatory treatment of Captain Blackwood was part of its policy or practice of discriminating against female pilots in the terms and conditions of their employment.

114.     Defendant is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its designated agents, discriminated against Captain Blackwood, in whole or in part, because of her sex.

115.     Defendant's acts and conduct in discriminating against Captain Blackwood were at all times willful and/or committed with reckless disregard for her federally-protected rights under Title VII.

116.     As a direct and proximate consequence of Defendant's unlawful discriminatory conduct, Captain Blackwood has sustained significant ongoing economic, consequential, and compensatory damages.

## SECOND CLAIM FOR RELIEF
### Sex Discrimination (Disparate Treatment) in Violation of Title VII
(42 U.S.C. §§ 2000e, *et seq.*)

117.     Captain Blackwood incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

118.     As a female, Captain Blackwood is a member of the class of persons protected from sex discrimination under Title VII.

119.     Defendant engaged in a pattern or practice of discrimination against female employees because of their sex.

120.    Throughout her tenure with SkyWest, Captain Blackwood has consistently been treated worse and held to different standards than her male counterparts.

121.    Captain Blackwood was subjected to a materially adverse employment action on or around April 4, 2019, when Defendant refused to provide her with light duty work.

122.    Captain Blackwood was at all times qualified for and able to perform light duty work, including reassignment as an Assistant Chief Pilot (also known as Flight Operations Supervisor), Safety Auditor, Pilot Recruiter, and/or Seat Substitute.

123.    Defendant's refusal to offer Captain Blackwood light duty work altered the terms and conditions of her employment.  Instead of earning 90% of her pilot's salary and maintaining eligibility for continued employer contributions to company-sponsored benefits, to which she would have been entitled had she been allowed to perform light duty work, Defendant forced Captain Blackwood onto unpaid medical leave for which she received workers compensation benefits equivalent to just 40% of her standard pilot's salary and was ineligible for employer contributions to company-sponsored benefits.

124.    SkyWest has offered similarly situated male pilots including, but not limited to, Jake Nelson and Mike Griggs, light duty work when they were unable to fly.

125.    Defendant's discriminatory treatment of Captain Blackwood was part of its policy or practice of discriminating against female employees in the terms and conditions of their employment.

126.    Defendant is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its designated agents, discriminated against Captain Blackwood, in whole or in part, because of her sex.

127. Defendant's acts and conduct in discriminating against Captain Blackwood were at all times willful and/or committed with reckless disregard for Captain Blackwood's federally-protected rights under Title VII.

128. As a direct and proximate consequence of Defendant's unlawful conduct, Captain Blackwood has sustained significant ongoing economic, consequential, and compensatory damages.

### THIRD CLAIM FOR RELIEF
### Retaliation in Violation of Title VII
(42 U.S.C. §§ 2000e, *et seq.*)

129. Captain Blackwood incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

130. As relevant to this claim, Captain Blackwood engaged in protected activity on at least four occasions: (1) when she reported Defendant's discriminatory and retaliatory conduct to Tracy Gallo, Vice President of Flight Operations, on or about April 16, 2019; (2) when she reported discrimination and harassment to Roy Glassey, Manager of Flight Operations, on or about April 25, 2019; (3) when she filed a Charge of Discrimination with the EEOC on or about October 17, 2019; and (4) when she complained about discrimination and retaliation to SkyWest Human Resources representative, Pennie Hancock, on or about June 4, 2020.

131. As soon as she reported SkyWest's unlawful and discriminatory conduct, Defendant began a pattern of retaliatory harassment against Captain Blackwood.

132. Defendant's harassment was frequent and severe and included interference with Captain Blackwood's worker's compensation case, interference with Captain Blackwood's efforts to secure clearance to return to full duty, and refusal to authorize or consider Captain Blackwood

for light duty assignments that would have enabled her to continue working at 90% pay with flight benefits.

133.   In retaliation for her protected opposition to sex discrimination in employment and/or her protected participation in EEOC proceedings under Title VII, Defendant further refused to consider or select Captain Blackwood for promotional opportunities for which she was well-qualified and applied.

134.   Defendant further retaliated by placing Captain Blackwood on a Medical Leave of Absence under a policy which requires her to renew her leave and risk termination every six months, which is not required under the Pilot Policy Manual applicable to pilots.

135.   Defendant further retaliated in June 2020 by refusing Captain Blackwood's request to see Dr. Reinsma so that she could be cleared to return to work, or renew her medical leave, thereby placing her job in jeopardy.

136.   Defendant would not have committed the above retaliatory acts but for Captain Blackwood's protected conduct, and has not engaged in similar retaliation and harassment of similarly situated pilots who have not engaged in protected opposition and/or participation activity under Title VII.

137.   Defendant is liable for the acts and/or omissions of its agents and employees. Defendant, either directly or by and through its designated agents, retaliated against Captain Blackwood because of her protected conduct in opposing discrimination under Title VII.

138.   Defendant's acts and conduct in retaliating against Ms. Blackwood were at all times willful and/or committed with reckless disregard for Captain Blackwood's federally-protected rights under Title VII.

139.     As a direct and proximate consequence of Defendant's illegal and retaliatory conduct, Captain Blackwood has sustained significant ongoing economic, consequential, and compensatory damages.

### FOURTH CLAIM FOR RELIEF
### Retaliation in Violation of the ADEA
(29 U.S.C. §§ 621, *et seq.*)

140.     Captain Blackwood incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

141.     Captain Blackwood engaged in protected activity on or about April 16, 2019 when she reported what she believed in good faith to be unlawful age discrimination in the terms and conditions of her employment to Tracy Gallo, Vice President of Flight Operations.

142.     She engaged in further protected conduct on or about April 25, 2019 when she reported what she believed in good faith to be unlawful age discrimination in the terms and conditions of her employment Roy Glassey, Manager of Flight Operations.

143.     On or about October 17, 2019, Captain Blackwood engaged in further protected conduct by filing a Charge of Discrimination with the EEOC alleging age discrimination.

144.     As soon as she reported SkyWest's unlawful and discriminatory conduct, Defendant began a pattern of retaliatory harassment against Captain Blackwood.

145.     Defendant's harassment was frequent and severe and included interference with Captain Blackwood's worker's compensation case, interference with Captain Blackwood's efforts to secure clearance to return to full duty, and refusal to authorize or consider Captain Blackwood for light duty assignments that it freely provided to younger male pilots who had not engaged in protected opposition or participation activity.

146.    Defendant further retaliated by placing Captain Blackwood on a Medical Leave of Absence under a policy which requires her to renew her leave, and risk termination, every six months, which is not required under the Pilot Policy Manual applicable to pilots.

147.    Defendant further retaliated by refusing Captain Blackwood's request to see Dr. Reinsma so that she could be cleared to return to work or renew her medical leave, thereby placing her job in jeopardy.

148.    Defendant would not have committed the above retaliatory acts but for Captain Blackwood's protected conduct and has not engaged in similar retaliation and harassment of similarly situated pilots who have not engaged in protected opposition and/or participation activity under the ADEA.

149.    Defendant is liable for the acts and/or omissions of its agents and employees. Defendant, either directly or by and through its designated agents, retaliated against Captain Blackwood because of her protected conduct in opposing discrimination under the ADEA.

150.    Defendant's acts and conduct in retaliating against Captain Blackwood were at all times willful and/or committed with reckless disregard for Captain Blackwood's federally-protected rights under the ADEA.

151.    As a direct and proximate consequence of Defendant's illegal and retaliatory conduct, Captain Blackwood has sustained significant ongoing economic, consequential, and compensatory damages.

### FIFTH CLAIM FOR RELIEF
### Disability Discrimination (Failure to Accommodate) in Violation of the ADA
(42 U.S.C. §§ 12101, *et seq.*)

152.    Captain Blackwood incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

153.    Captain Blackwood is disabled under the ADA.  She suffers from chronic nerve pain, back pain, and neck pain caused in whole or in part because of her workplace injury in March 2019.  These ailments alone, or in combination, are a physical impairment that substantially limits Ms. Blackwood's major life activities, including but not limited to the activities of lifting, pushing and pulling.

154.    At all relevant times, Captain Blackwood was qualified to perform her job and other jobs with Defendant with or without reasonable accommodation.

155.    On or around April 3, 2019, Captain Blackwood requested a light duty assignment consistent with her restrictions while she regained her strength and recovered from her March 11, 2019 back and neck injury.

156.    On or about April 4, 2019, Defendant refused to engage the interactive process in good faith, and instead flatly denied Captain Blackwood's request for a light duty assignment without explanation or discussion.

157.    Upon information and belief, Defendant could have reassigned Captain Blackwood to a light duty assignment as it routinely did for other injured pilots, including but not limited to Seat Substitute, Assistant Chief Pilot (also known as Flight Operations Supervisor), Safety Auditor, and/or Pilot Recruiter positions.

158.    Defendant is liable for the acts and/or omissions of its agents and employees. Defendant, either directly or by and through its designated agents, discriminated against Captain Blackwood because of her status as a disabled person.

159.    Defendant's unlawful discriminatory conduct was at all times willful and/or committed with reckless disregard for Captain Blackwood's federally-protected rights under the ADA.

160.    As a direct and proximate consequence of Defendant's unlawful conduct, Captain Blackwood has sustained significant economic, consequential, and compensatory damages.

**SIXTH CLAIM FOR RELIEF**
**Retaliation in Violation of the ADA**
(42 U.S.C. §§ 12101, *et seq.*)

161.    Captain Blackwood incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

162.    Captain Blackwood engaged in protected activity by requesting a reasonable accommodation following her workplace injury on or about March 11, 2019, including but not limited to her request for light duty work on April 3, 2019.

163.    On October 17, 2019, Captain Blackwood engaged in further protected activity by filing a Charge of Discrimination alleging disability discrimination with the EEOC.

164.    Defendant retaliated by interfering with Captain Blackwood's worker's compensation case, interfering with Captain Blackwood's efforts to secure clearance to return to full duty, and refusing to authorize or consider Captain Blackwood for light duty assignments that would have allowed her to continue working.

165.    Defendant also refused to consider or select Captain Blackwood for promotional opportunities for which she was well-qualified and applied, after and because of her protected opposition to disability discrimination in employment with Defendant and/or her protected participation in EEOC proceedings under the ADA.

166.    Defendant further retaliated by placing Captain Blackwood on a Medical Leave of Absence under a policy which requires her to renew her leave, and risk termination, every six months, which is not required under the Pilot Policy Manual applicable to pilots.

167.    Defendant further retaliated by refusing Captain Blackwood's request to see Dr. Reinsma so that she could be cleared to return to work, or renew her medical leave, thereby placing her job in jeopardy.

168.    Defendant would not have committed the above retaliatory acts but for Captain Blackwood's protected conduct, and has not engaged in similar retaliation and harassment of similarly situated pilots who have not engaged in protected opposition and/or participation activity under the ADA.

169.    Defendant is liable for the acts and/or omissions of its agents and employees. Defendant, either directly or by and through its designated agents, retaliated against Captain Blackwood because of her request for a reasonable accommodation and protected conduct in opposing discrimination under the ADA.

170.    Defendant's unlawful retaliatory conduct was at all times willful and/or committed with reckless disregard for Captain Blackwood's federally-protected rights under the ADA.

171.    As a direct and proximate consequence of Defendant's unlawful conduct, Captain Blackwood has sustained significant ongoing economic, consequential, and compensatory damages.

### SEVENTH CLAIM FOR RELIEF
**Hostile Work Environment in Violation of Title VII, the ADEA, and the ADA**
(42 U.S.C. §§ 2000e, *et seq*., 29 U.S.C. §§ 621, *et seq*., and 42 U.S.C. §§ 12101, *et seq*.)

172.    Captain Blackwood incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

173.    Captain Blackwood is a 58-year-old disabled female, and thus is a member of the classes of persons protected from discrimination under Title VII, the ADEA, and the ADA.

174.    Defendant subjected Captain Blackwood to a hostile and abusive work environment because of her sex, because of her protected opposition to sex, age, and disability discrimination and retaliation and/or because of her protected participation activity within the meaning of Title VII, the ADEA, and the ADA.

175.    During the eight years that Captain Blackwood reported to Captain Venturella, he demonstrated a flagrant disregard for her (and other female pilots) because of her sex, and subjected her to a hostile work environment, which included flagrantly sexist comments such as: "This is why women shouldn't fly airplanes.  You should be in the kitchen cooking dinner for your husband," and repeated unjustified refusals to consider her for advancement to higher positions for which he selected only male pilots.

176.    Although Captain Blackwood more than once reported Captain Venturella's discrimination and harassment to Defendant's then-legal-counsel, Kelly Jasmine, nothing changed.

177.    In or about 2010, Captain Blackwood began reporting to Chief Pilot Rob Graser, who continued subjecting Captain Blackwood to discrimination and a sexually-hostile work environment.

178.    Captain Graser created a hostile and abusive working environment by repeatedly attempting to issue false and contrived warnings, refusing to place commendations in her personnel file, and by repeatedly refusing to consider her for advancement to higher positions for which he selected men.

179.    Defendant's conduct was sufficiently severe and pervasive to alter the conditions of Captain Blackwood's employment, and did in fact alter the conditions thereof.

180.    Although Defendant was advised of and knew of the hostile work environment to which Captain Blackwood was subject, it took no remedial action, but instead substantially ratcheted up the harassment after her workplace injury and request for accommodation.

181.    Defendant is liable for the acts and/or omissions of its agents and employees. Defendant, either directly or by and through its designated agents, created, approved and/or ratified the hostile and abusive work environment to which Captain Blackwood was subject.

182.    Defendant's unlawful discriminatory and retaliatory conduct was at all times willful and/or committed with reckless disregard for Captain Blackwood's federally-protected rights.

183.    As a direct and proximate consequence of Defendant's unlawful conduct, Captain Blackwood has sustained significant ongoing economic, consequential, and compensatory damages.

## VII.    RELIEF REQUESTED

WHEREFORE, Captain Blackwood respectfully requests that the Court enter judgment in her favor and against Defendant, and award the following relief as allowed by law:

   a.   Back pay, in amounts to be determined at trial;

   b.   Front pay as allowed by law;

   c.   Compensatory and consequential damages on all claims allowed by law;

   d.   Liquidated damages on all claims allowed by law;

   e.   Injunctive and/or declaratory relief;

   f.   Punitive damages on all claims allowed by law;

   g.   Pre-judgment and post-judgment interest at the highest lawful rate;

   h.   Attorneys' fees and costs of this action (including expert witness fees), as appropriate; and

      i.   Such other and further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 27th day of April 2021.

JONES LAW, INC.

_s/ Kimberly J. Jones_

Kimberly J. Jones
Emma M. Feeney
4 W. Dry Creek Circle, Suite 100
Littleton, CO 80120
(303) 551-1289 (p)
kim@jones-legal.com
emma@jones-legal.com

LISA R. SAHLI, ATTORNEY AT LAW, LLC

_s/ Lisa R. Sahli_

Lisa R. Sahli
P.O. Box 270834
Littleton, CO 80127
(720) 545-1690 (p)
sahlilaw@gmail.com

ATTORNEYS FOR PLAINTIFF